*Tagged Opinion*



**ORDERED in the Southern District of Florida on February 14, 2017.**

**Laurel M. Isicoff
Chief United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Arm Ventures, LLC                         CASE NO. 16-23633-BKC-LMI
        Debtor(s).
_____/              Chapter 11

**MEMORANDUM OPINION ON
ORDER CONDITIONALLY GRANTING OCEAN BANK'S MOTION FOR RELIEF
FROM STAY BUT DENYING OCEAN BANK'S REQUEST FOR DISMISSAL**

This matter came before me on December 8, 2016, at 1:30 p.m. upon Ocean Bank's Motion for Entry of an Order (I) Dismissing the Debtor's Chapter 11 Case or, Alternatively, (II) Granting Relief from the Automatic Stay (the "Motion") (ECF #55). Having considered the pleadings,[1] other matters filed on the docket, the applicable law, and the arguments of counsel,

---

[1] I have considered the Motion; the Debtor's Objection to Ocean Bank's Motion for Entry of an Order (I) Dismissing the Debtor's Chapter 11 Case or, Alternatively, (II) Granting Relief from the Automatic Stay (the "Objection")(ECF #72); the Debtor's Supplement to Debtor's Objection to Ocean Bank's Motion for Entry of an

1

for the reasons set forth below, the Motion to Dismiss is DENIED without prejudice; the Motion for Relief from Stay is GRANTED subject to the conditions outlined herein and in the Order Denying Ocean Bank's Motion for Entry of an Order Dismissing the Debtor's Chapter 11 Case and Conditionally Granting Relief from the Automatic Stay that was entered on January 27, 2017 (ECF #139).[2]

## BACKGROUND[3]

The Debtor, Arm Ventures, LLC, filed its voluntary chapter 11 petition on October 4, 2016 (ECF #1).[4] The Debtor owns commercial property at 753-755 Arthur Godfrey Rd., Miami Beach, Florida 33140 (the "Commercial Property"). Bonino Investment Group, LLC (trustee) owns 51.20% of the Commercial Property while the Debtor owns 48.8%. (ECF #16). The Debtor claims that there are currently at least three entities leasing space at the Commercial Property.[5]

---

Order (I) Dismissing the Debtor's Chapter 11 Case or, Alternatively, (II) Granting Relief from the Automatic Stay (the "Debtor's Supplement")(ECF #81); Ocean Bank's Supplemental Memorandum of Law in Further Support of its Motion to Dismiss ("Ocean Bank's Supplement")(ECF #98); the Debtor's Response to Ocean Bank's Supplemental Memorandum of Law in Further Support of its Motion to Dismiss (the "Debtor's Response")(ECF #108); and Ocean Bank's Reply to Debtor's Response to Ocean Bank's Supplemental Memorandum of Law in Further Support of its Motion to Dismiss ("Ocean Bank's Reply")(ECF #117). I will not consider the Debtor's Second Supplement to Objection Ocean Bank's Motion for Entry of an Order (I) Dismissing the Debtor's Chapter 11 Case or, Alternatively, (II) Granting Relief from the Automatic Stay (ECF #109) or any other pleadings relating to the Motion that were filed by the Debtor if the Debtor did not seek prior authority to file the additional documents.

[2] I originally delivered this ruling orally on January 23, 2017. Subsequent to that oral ruling (and the written order that followed), the Debtor has filed a Second Amended Chapter 11 Plan of Reorganization (ECF #149) and a Second Amended Disclosure Statement (ECF #150), pursuant to which the Debtor's reorganization is based on income that is not derived directly or indirectly from the sale of marijuana.

[3] The following are facts that are not disputed, except where noted. Although I have not conducted an evidentiary hearing on the motion to dismiss the parties have each filed multiple documents all of which I have considered, together with the applicable state and federal statutes and the Florida Department of Health's Office of Compassionate website at http://www.floridahealth.gov/programs-and-services /office-of-compassionate-use/. I have also reviewed the National Institute on Drug Abuse's website at https://www.drugabuse.gov/drugs-abuse/marijuana/nidas-role-in-providing-marijuana-research and the Marinol website located at http://www.marinol.com.  At the hearing at which I read portions of this ruling into the record, I told counsel that if they believed anything I had considered was inappropriate or that I needed to consider additional evidence that they needed to advise me at the end of the hearing. Other than the limited 2004 examination referenced in *infra* n. 11 and *n*. 22, the parties told me no additional evidence was necessary.

[4] The Debtor listed this case as a Single Asset Real Estate Case as defined by 11 U.S.C. §101(51B).

[5] The Chapter 11 Case Management Summary (ECF #16) indicates that there are currently three active leases - with Pharmaquick, LLC, Bonino Investment Group, LLC, and the Rosenbaum International Law firm, P.A., all insiders

Ocean Bank holds a first mortgage that is secured by the building and land that make up the Commercial Property. (Ex. 2 p. 27-43). Ocean Bank and the Debtor have had a relationship for over a decade and Ocean Bank served as the primary lender and depository in regards to a series of United States Small Business Administration Loans ("SBA Loans") and non-SBA guaranteed loans made to the Debtor and its affiliates.[6] Additionally, Ocean Bank provided depository, loan, merchant, trust, and advisory services in regards to a pool of common collateral securing all of the SBA Loans involving ARM Ventures. (ECF #81).

On April 20, 2010, the Debtor and its affiliates filed a state court lawsuit raising several lender liability claims against Ocean Bank.[7] On June 2, 2011, Ocean Bank filed two cases against the Debtor, its affiliates and the Guarantors to collect on some of the loans.[8] The three cases were eventually consolidated (the "Consolidated Lawsuit"). Although Ocean Bank extended numerous loans to the Debtor, the Consolidated Lawsuit only involved three loans - the Ocean Bank mortgage loan and two credit line loans. Those loans were all secured by the Commercial Property.

On August 16, 2012, the state court entered summary judgment in favor of Ocean Bank in the amount of $667,113.17 and ordered the sale of the Commercial Property. (Ex. 5). The state court judge also ruled that Ocean Bank was entitled to its attorneys' fees, but reserved jurisdiction to determine the amount of attorney's fees until the state court resolved all remaining

---

of the Debtor. A fourth lease, with Modern Pharmacy, LLC, has been mentioned at various hearings, but it now appears that Modern Pharmacy, LLC does not yet have a lease at the Commercial Property. Apparently no copies of the leases have been produced so the status of leases is not clear.

[6] Affiliates include Pharmaquick, LLC and Modern Pharmacy. LLC. The loans were guaranteed by Michael Rosenbaum, Berta Rosenbaum, Abraham Rosenbaum, Robert Novigrod and Kimberly Novigrod.

[7] *ARM Ventures, LLC, et al. v. Ocean Bank, et al.*, Case No. 10-23836 CA (02).

[8] In *Ocean Bank v. ARM Ventures, LLC, et al.*, Case No. 11-16966 CA(02), Ocean Bank sought enforcement of a promissory note, guarantees, and foreclosure of the pharmacy building owned by the Debtor that secured the ARM Ventures Loan. In *Ocean Bank v. Modern Pharmacy, LLC, et al.*, Case No. 11-16969 CA (02), Ocean Bank sought enforcement of the promissory notes relating to the Modern Pharmacy loan and the Pharmaquick loan.

issues in the Consolidated Lawsuit, including the Debtor's multiple counterclaims and defenses against Ocean Bank. The Commercial Property was redeemed prior to the foreclosure sale. Final summary judgment as to the remaining issues in the Consolidated Lawsuit was rendered in Ocean Bank's favor in April 2013 (Ex. 6) and affirmed by the Third District Court of Appeal. (Ex. 7).

Final judgment awarding Ocean Bank attorney fees in an amount of $841,099.03 was entered in the state court on February 19, 2015. (Ex. 8). The Debtor unsuccessfully appealed that judgment to the Third District Court of Appeal. (Ex. 9). The state court set a foreclosure sale in accordance with the February, 2015, judgment for May 31, 2016. (Ex. 10). The night before the sale, the Debtor removed the state court case to the United States District Court which removal cancelled the foreclosure sale. (Ex. 11). Soon thereafter, the case was remanded to the state court (Ex. 13) and a second foreclosure sale was set for July 28, 2016. (Ex. 15).

The night before the second foreclosure sale, the Debtor removed the case to federal court again. (Ex. 16). The foreclosure sale was, again, automatically cancelled. (Ex. 17). The District Court remanded the case to state court and in its remand order enjoined the Debtor from any further removal of the state court case. (Ex. 18).

The third foreclosure sale was set for October 5, 2016. (Ex. 21). In the days leading up to the third sale, the Debtor filed multiple emergency motions in the state court to delay the October 5 sale. (Exs. 22, 24, 25). The state court judge denied the motions and further ordered that "no further Motions to Cancel the Sale or Motions for Reconsideration will be entertained by the Court prior to tomorrow's sale date." (Ex. 27). The day before the third foreclosure sale, the Debtor filed this Chapter 11 case. (ECF #1).

Shortly after the Debtor filed its petition, Ocean Bank filed this Motion arguing that the

4

case should be dismissed for cause under 11 U.S.C. §1112(b)(1) because the case was filed in bad faith. Ocean Bank argues that the Debtor's bad faith is evidenced by the Debtor's repeated attempts to stop the foreclosure sale by using procedures in both the state and federal court and using the bankruptcy court as a last resort when the prior procedures did not yield the Debtor's desired results. (ECF #55).

At the hearing on the Motion, the Debtor acknowledged that the timing of the filing was unfortunate, but was really due to the fact that the Debtor was acting without advice of bankruptcy counsel when all those prior actions occurred. This argument is unpersuasive. The Debtor's principal is a lawyer, and also apparently the author of most, if not all, of the pleadings that were filed in the proceedings leading up to the case, and the author, or co-author of some of the pleadings that have been filed in this case.

Nonetheless, the Debtor urges that it filed bankruptcy with the intention of reorganizing its business, which business the Debtor alleges currently consists of leasing portions of the Commercial Property to its affiliates - Pharmaquick, LLC ("Pharmaquick"), Rosenbaum International Law Firm, P.A., and Bonino Investment Group, LLC; and adding another tenant – its affiliate Modern Pharmacy, LLC ("Modern Pharmacy").

In support of its stated intent to reorganize, prior to the hearing on the Motion, the Debtor filed a Plan of Reorganization (the "Plan")(ECF #76) and Disclosure Statement for Plan of Reorganization (the "Disclosure Statement")(ECF #77), which Plan proposed, among other things, to rent space in the Commercial Property to a business that generates income from medical marijuana.[9]

---

[9] Subsequent to the hearing on the Motion, the Debtor filed a First Amended Plan (ECF #97) and First Amended Disclosure Statement (ECF #99) as well as a Supplement to Debtor's First Amended Disclosure Statement (ECF #118).

5

At the December 8 hearing Ocean Bank argued that, in addition to the *Phoenix Piccadilly* factors that it raised in the Motion, the Plan provided further support for dismissal since the Plan is based on income generated from marijuana. Ocean Bank pointed out that every court in the country that has dealt with a plan funded in whole or in part by the sale of marijuana has refused to confirm the plan. The Debtor responded that its proposed tenant, later revealed to be Modern Pharmacy, is going to apply for all the appropriate licenses under state and federal law necessary to sell medical marijuana, making its plan confirmable. At the hearing the Debtor also stated that Modern Pharmacy and Pharmaquick are already selling some kind of marijuana based drugs.[10] Ocean Bank observed that neither Modern Pharmacy nor Pharmaquick are currently listed as one of the seven licensed dispensing organizations approved in Florida to dispense low-THC cannabis and medical cannabis and, consequently, the sale of any marijuana based drug at the Commercial Property puts its collateral at risk.

At the conclusion of the hearing on December 8, I directed the Debtor to file an amended plan that either did not depend on marijuana as an income source, or better addressed several shortfalls with the plan structure. I also ordered the Debtor and Ocean Bank to file memoranda of law on the marijuana issue if the amended plan was going to rely on marijuana income. The Debtor then filed its First Amended Chapter 11 Plan of Reorganization (the "Amended Plan")(ECF #97). The Amended Plan continues to rely on income generated from medical marijuana to make plan

---

[10] At the January 23 hearing at which I delivered the oral ruling that is memorialized in this Memorandum Opinion, Debtor's counsel confessed he did not actually know what was being sold at the Commercial Property. At a limited 2004 examination conducted after I delivered the oral ruling it was determined that Pharmaquick is selling Marinol, which is a synthetic analogue that may be legally sold pursuant to the Drug Enforcement Agency's (the "DEA") Rules if the pharmacy is licensed to prescribe Schedule III drugs. Florida has its own standards and schedules for classifying controlled substances, the Florida Schedules, which slightly differ from the Federal Schedules. Under the Florida Schedules, Marinol is classified as a Schedule III Drug. *See* Fla. Stat. §893.03(2)-(3). According to the Debtor, both Modern Pharmacy and Pharmaquick are licensed to sell Schedule II and Schedule III substances (ECF #108-2). An analogue is "a chemical compound that is structurally similar to another but differs slightly in composition (as in the replacement of one atom by an atom of a different element or in the presence of a particular functional group).". *See Analogue, The Merriam-Webster Dictionary New Edition* (2016).

6

payments, including payments to Ocean Bank tied to the amount of income generated from the marijuana business.[11],[12]

Thus the Debtor and Ocean Bank filed supplemental briefing on the marijuana issue.

## DISCUSSION

11 U.S.C. §1112 lays out a non-exclusive list of reasons a court should consider dismissal of a chapter 11 case, including "for cause".[13]  "For cause" includes the filing of a bankruptcy case in

---

[11] The Amended Plan provides that

> the payments to Ocean Bank to be made pursuant to section 5.3 of the Plan in addition to the Guaranteed Ocean Bank Plan Payments which shall equal 75% of the net income received by the Debtor from the lease of the second story to the Floor # 2 Leases: Compounding Pharmacy / CSA Marihuana Project which are projected to total $562,135.62 over the life of the Plan and which shall be paid to Ocean Bank on each anniversary of the Effective Date as an advanced payment towards the balloon payment that is due on the 60th month following the Effective Date.

[12] As noted, *see supra* n. 2, the Debtor has now filed a Second Amended Plan that complies with my oral ruling on January 23.

[13] "Cause" includes:

> **(A)** substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
> **(B)** gross mismanagement of the estate;
> **(C)** failure to maintain appropriate insurance that poses a risk to the estate or to the public;
> **(D)** unauthorized use of cash collateral substantially harmful to 1 or more creditors;
> **(E)** failure to comply with an order of the court;
> **(F)** unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;
> **(G)** failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor;
> **(H)** failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any);
> **(I)** failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief;
> **(J)** failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court;
> **(K)** failure to pay any fees or charges required under chapter 123 of title 28;
> **(L)** revocation of an order of confirmation under section 1144;
> **(M)** inability to effectuate substantial consumption of a confirmed plan;
> **(N)** material default by the debtor with respect to a confirmed plan;

bad faith. *Albany Partners, Ltd. v. Westbrook* (*In re Albany Partners, Ltd.*), 749 F.2d 670 (11th Cir. 1984). When determining whether a chapter 11 case should be dismissed as a bad faith filing, I must consider factors that evidence "an intent to abuse the judicial process and the purposes of the reorganization provisions". Thus I may consider factors such as "when there is no realistic possibility of an effective reorganization and it is evident that the debtor seeks merely to delay or frustrate the legitimate efforts of secured creditors to enforce their rights." *Id.* at 674.

The Eleventh Circuit in *Phoenix Piccadilly, Ltd. v. Life Insurance Co. of Virginia (In re Phoenix Piccadilly, Ltd.),* 849 F.2d 1393 (11th Cir. 1988), listed a number of subjective factors in determining whether a dismissal for bad faith is appropriate. The factors include whether:

(i)   The Debtor only has one asset, . . .;
(ii)  The Debtor has few unsecured creditors whose claims are small in relation to the claims of the Secured Creditors;
(iii) The Debtor has few employees;
(iv)  The Property is the subject of a foreclosure action as a result of arrearages on the debt;
(v)   The Debtor's financial problems involve essentially a dispute between the Debtor and the Secured Creditors which can be resolved in the pending State Court Action; and
(vi)  The timing of the Debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the Debtor's secured creditors to enforce their rights.

*Phoenix Piccadilly*, 849 F.2d at 1384-95.

The Debtor has only one asset[14] – the Commercial Property (and the leases relating to the Commercial Property) and no employees. The Debtor does have some other unsecured creditors;

---

(**O**) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and
(**P**) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

11 U.S.C. §1112(b)(4).

[14] After adoption of the single asset real estate provisions, the fact that a debtor only has one asset and few or no employees is not as significant when the debtor complies with the requirements of 11 U.S.C. §362(d)(3) and timely files a plan or starts making the required payments.

to date there are eight additional parties with undisputed non-insider non-priority unsecured claims totaling $631,987.00.[15] These claims are not insignificant in comparison to the $1,083,817.38 bifurcated claim filed by Ocean Bank[16]. However there is no doubt that the impending foreclosure sale, and the Debtor's frustration at the lack of success of its other litigation strategies to avoid a foreclosure of the Commercial Property is what precipitated the filing of this case.[17] Moreover, it is clear, based on all the events leading up to the filing, that this is essentially a dispute between Ocean Bank, the Debtor, and the various guarantors who are seeking to avoid liability.

In determining whether dismissal is appropriate due to lack of good faith I may also consider whether the Debtor has the ability to reorganize itself. *See In re North Redington Beach Associates, Ltd.*, 91 B.R. 166, 169 (Bankr. M.D. Fla. 1988). If after considering the economic realities of the Debtor's situation, I believe that there is no realistic chance for the Debtor to successfully reorganize, the case should be dismissed. *In re Albany Partners, Ltd.*, 749 F.2d at 674. *See also In re Natural Land Corp.,* 825 F. 2d 296 (11th Cir. 1987). *Accord* 11 U.S.C. §1112(b)(4)(J).

The Debtor argues that it will be able to prove feasibility at confirmation. Modern Pharmacy, the proposed tenant, has apparently applied for both state and federal approval to cultivate and sell marijuana; however, Modern Pharmacy has yet to have its applications granted (ECF #118).[18] Ocean Bank argues that the Plan is unconfirmable because it is highly unlikely

---

[15] The IRS has filed a $8,190.00 unsecured claim (Claim 1-2); however, on the Debtor's Schedules the IRS claim was listed as a priority claim under §507(a)(8). It is not clear whether the unsecured claim is in addition to, or replaces, the scheduled claim.

[16] Ocean Bank filed a claim with a secured amount of $905,942.88 and an unsecured amount of $177,874.50.

[17] At the hearing, and in paragraph 26 of the Objection, the Debtor argued in support of its good faith intention to reorganize - "The possibility of the generation of the Marijuana Income only became a reality due to the results of the November 8, 2016 election…". However, this bankruptcy case was filed more than a month prior to the passage of the constitutional amendment.

[18] Florida just recently adopted a constitutional amendment that legalizes medical marijuana. However, the state and

that Modern Pharmacy would be able to get both state and federal approval to manufacture and sell medical marijuana – especially since, according to Ocean Bank, the Commercial Property is in close proximity to a school and to a synagogue (ECF #117). However, it is not necessary for me to go into the details of where the Commercial Property is located, nor what is the status of the applications because the law is very clear – a bankruptcy plan that proposes to be funded through income generated by the sale of marijuana products cannot be confirmed unless the business generating the income is legal under both state law and federal law.  Moreover, the conditions for feasibility are so speculative – both as to timing and authority - that any plan proposed by the Debtor based on the sale of marijuana is not confirmable, certainly not for the foreseeable future.

In *In re Rent-Rite Super Kegs W. Ltd.*, 484 B.R. 799, 809 (Bankr. D. Colo. 2012), the court ruled it would dismiss or convert the debtor's chapter 11 case because the debtor derived 25% of its revenues from leasing space to a tenant who was engaged in growing marijuana in a business legal under state law, but which business did not have DEA approval. The court noted that even if there were no good faith requirement in section 1129, the court could not confirm a plan that relied on income derived from a criminal activity.

In *In re Jerry L. Johnson*, 532 B.R. 53 (Bankr. W.D. Mich. 2015) the U.S. Trustee filed a motion to dismiss the chapter 13 case of a debtor whose income was derived partially from the cultivation and sale of marijuana to three patients to whom he also provided caregiver services.

---

local regulations and laws necessary to implement the change are still in the process of being drafted. Since 2014 under Fla. Stat. §381.986, there has been a limited exception in Florida allowing for the use of medical cannabis if the patient's condition is terminal within one year, or the of low-THC cannabis for cancer, epilepsy, chronic seizures and chronic muscle spasms. Currently Florida has authorized seven dispensaries – Modern Pharmacy is not one of them. The constitutional amendment passed in 2016 expands the availability of medical marijuana to patients with one of ten (10) listed diseases or some "other debilitating medical conditions of the same kind or class as or comparable to those enumerated."  However, while the Department of Health is promulgating rules dealing with the new amendment, Fla. Stat. §381.986 is the only law authorizing the use of cannabis in Florida.

The debtor, who was licensed to grow and sell marijuana under state law grew the marijuana in his home. The debtor also had social security income which income he testified was the source of his chapter 13 payments to the chapter 13 trustee. The court held that, notwithstanding that the debtor's payments were from an "untainted" source, the debtor's continuing operation of a marijuana business, even if the income were segregated, would require the court, the trustee, and even the debtor (who under chapter 13 retains property of the estate) [19] to violate federal law, which they could not. Because the debtor had legitimate reasons to be in bankruptcy, the court said rather than dismiss the case the debtor could stop operating the marijuana business; otherwise, the case would have to be dismissed.

In *In re Arenas*, 535 B.R. 845 (10th Cir. B.A.P. 2015), a chapter 7 case was filed by a state-licensed marijuana grower and his wife, whose income also included lease income from a state licensed marijuana dispensary. The U.S. Trustee filed a motion to dismiss the case on the basis that the chapter 7 trustee could not administer the assets – it would be a violation of federal law to which the trustee is subject. In response the debtors filed a motion to convert the case to a case under chapter 13 which motion the bankruptcy court denied. The bankruptcy court ruled that because the debtors' plan would have been funded from an activity illegal under Federal law - the growing and dispensing of medical marijuana - it was not a plan "proposed in good faith and not by any means forbidden by law" a confirmation requirement under 11 U.S.C. §1325(a)(3). Since the debtors could not confirm a plan without the marijuana income, the debtors could not qualify to be debtors in a chapter 13 case. The court was also concerned because confirming the plan would require the Chapter 13 Trustee to violate federal criminal law to administer the plan payments. The bankruptcy court then granted the U.S. Trustee's motion to

---

[19] The court observed that a chapter 13 debtor, is, effectively, a debtor-in-possession – a bankruptcy fiduciary, and therefore cannot engage in activity illegal under federal law.

11

dismiss. The B.A.P. affirmed both the bankruptcy court's decision to deny the debtors' motion to convert their case to chapter 13 and to grant the U.S. Trustee's motion to dismiss. *Id.* at 855. *See also In re McGinnis*, 453 B.R. 700 (Bankr. D. Or. 2011) (holding that a chapter 13 plan was unconfirmable because it relied on a future change to Oregon medical marijuana law and it violated federal law).[20]

Even if the Debtor was otherwise of "pure mind and heart" when this case was filed, the very fact that the Amended Plan is based on income derived from the sale of marijuana can be deemed "bad faith". In *Arenas* the B.A.P. affirmed the bankruptcy court's finding that, notwithstanding that the debtors appeared "to be sincere and credible" and "their motives in seeking bankruptcy relief were not improper", nonetheless, "[i]t is objectively unreasonable for them to seek Chapter 13 relief whether their intentions are kindly or not" and, therefore, the B.A.P. upheld the bankruptcy court's finding of bad faith. 535 B.R. at 852-53. *Accord In re Jerry L. Johnson*, 532 B.R. at 53.

The Debtor argues that Modern Pharmacy should have a good chance of approval under the new Florida law because two of its principals already have licenses to handle Scheduled substances. However, in addition to the fact that whether Modern Pharmacy will be approved by the State of Florida to manufacture or sell medical marijuana is highly speculative (the rules and regulations haven't even been adopted yet), it is also irrelevant.

In each case where the court has denied confirmation or dismissed a case stemming from funding dependent in whole or in part from marijuana, the marijuana source of funding was legal

---

[20] There are many more cases that have addressed this issue either directly or indirectly, *see e.g*. *In re Medpoint Mgt., LLC.*, 528 B.R. 178 (Bankr. D. Ariz. 2015), *vacated in part*, 2016 WL 3251581 (9th Cir. B.A.P. 2016)(petitioning creditors who filed an involuntary petition against a company with whom they were involved in the (legal under state law) medical marijuana business, acted with unclean hands because they were engaged in activity illegal under federal law). The holding of each is the same – the cultivation and sale of marijuana is illegal under federal law and therefore the federal law and the federal courts are not available to any person engaged in that business.

12

under the relevant state law. The issue is whether Modern Pharmacy would be approved under *Federal* law to manufacture or sell marijuana. As of now, in all the years that marijuana has been explored as an option for treatment, only the University of Mississippi has ever received approval by the Federal government to grow, harvest, and store bulk marijuana and purified elements of marijuana for use by researchers. Thus it is highly unlikely, and at a minimum, at this juncture an extremely remote possibility, that the Debtor will receive approval from the Federal government.

In sum, in order to confirm the Amended Plan, the Debtor would face several hurdles including (a) proving by confirmation that Modern Pharmacy's business operation would be legal under both state and federal law and (b) proving that the income stream from the medical marijuana business would begin shortly after confirmation as opposed to years in the future.

It is not necessary to wait until a confirmation hearing. First, the Debtor cannot rid itself of the taint of the bad faith filing. *See In re Natural Land Corp.,* 825 F. 2d at 296; *Albany Partners*, 749 F.2d at 670. Second, the Amended Plan is based on an enterprise illegal under Federal law, and therefore one that I cannot confirm because the Debtor cannot satisfy the requirements of 11 U.S.C.§1129(a)(3). Third, the Amended Plan is highly speculative. As the United States Supreme Court held in a slightly different context, effective reorganization means "there must be 'a reasonable possibility of a successful reorganization within a reasonable time.'" *United Savings Ass'n of Texas v. Timbers of Inwood Forest*, 484 U.S. 365, 376 (1988).

So, it is clear that this case is ripe for dismissal – both for subjective bad faith and objective bad faith; however, there is significant non-insider unsecured debt and I am not convinced at this juncture that dismissal is in the best interests of those creditors. It appears this case should remain in bankruptcy. So the motion to dismiss is DENIED.

Ocean Bank alternatively argues that, at a minimum it is entitled to relief from stay. I agree. While I may have determined that, notwithstanding the multiple indicia of bad faith, dismissal is not immediately appropriate, I nonetheless find that those same factors warrant stay relief. *See Natural Land Corp.,* 825 F. 2d at 296.

In addition, Ocean Bank, who has been receiving adequate protection payments[21], became concerned that it cannot accept those adequate protection payments, since, according to the Debtor, the payments were generated by the sale of marijuana based products. Ocean Bank expressed concern that the Property could be subject to forfeiture under 21 U.S.C. §81(a)(7). However, apparently the sale of Marinol is legal. So, as it seems the Debtor's tenants are not selling medical marijuana, it appears Ocean Bank may accept the adequate protection payments without violating Federal law.[22]

Nonetheless, due to the Debtor's bad faith in filing this case and the Debtor's inability or unwillingness to propose a confirmable plan, Ocean Bank is granted relief from stay subject to the conditions set forth below.

## CONCLUSION

Based on the foregoing it is ORDERED AS FOLLOWS:

1. Ocean Bank's Motion to Dismiss is DENIED. However, the Debtor will have fourteen (14) days from the date hereof to file a plan that does not depend on marijuana as a source of income. If the Debtor does not timely file an amended plan that complies with this directive the case shall be converted to a case under Chapter 7.[23]

2. Ocean Bank is granted relief from stay to continue with the foreclosure action. However, if the Debtor files a plan that does not depend on the sale of marijuana as

---

[21] The Debtor filed a Motion for Authorization to Make Monthly Adequate Protection Payments to Ocean Bank (ECF #25). On November 23, 2016 the Court entered an Interim Order Granting Debtor's Motion for Payment of Adequate Protection to Ocean Bank (ECF #61).

[22] Subsequent to my issuing my oral ruling, Ocean Bank conducted a limited 2004 examination and confirmed that the Debtor's income was not derived either directly or indirectly from the sale or production of marijuana.

[23] The Debtor has timely filed a Second Amended Plan. *See supra* n. 2.

an income source then the sale shall not be set for a date earlier than 75 days from the date hereof.  If the Debtor's plan is confirmed before the expiration of the 75 days, then the sale shall be cancelled. If the Debtor does not file a plan within fourteen (14) days, then Ocean Bank may reset the sale for the earliest date allowed under state law.

# # #

Copies furnished to:
James Robinson, Esq.

*Attorney Robinson shall serve a conformed copy of this order upon all parties in interest and shall file a Certificate of Service of same with the Clerk of the Court.*